## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GILBERT TRUJILLO,

          Plaintiff,

v.                                                    CIV. NO. 13-1044-WJ-GBW

CAROLYN W. COLVIN,
*Acting Commissioner of the*
*Social Security Administration*,

          Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision and supporting memorandum.  *Docs.* 27, 27, Ex. 1. Having reviewed the briefing (*docs. 28, 30*), the administrative record, and the applicable law, the Court recommends GRANTING Plaintiff's motion and REMANDING this action to the Commissioner for further proceedings consistent with this opinion.

I.    BACKGROUND

    A.  **Plaintiff's Medical History**

Plaintiff, who was 43 years old at the time of his alleged disability onset date, sought benefits based on the following impairments: stress, depression, a right knee injury, and scoliosis.  AR at 35-36, 17-18.  In his opinion, the ALJ found Plaintiff's knee injury, obesity, bipolar disorder, and depression to be "severe" impairments within the meaning of the Social Security regulations.  AR at 17.  Plaintiff does not contest these findings.  *See Doc. 27*, Ex 1.  Instead, he asserts that the ALJ erred in analyzing Plaintiff's

treating source's opinions regarding Plaintiff's mental ability to do unskilled work.  The

Court's written review of the medical records will therefore focus primarily on Plaintiff's

mental impairments.

 1. Plaintiff's Depression

 On March 3, 2010, Plaintiff visited Arlene Brown, M.D., for a medical consultation.

AR at 284.  Dr. Brown's notes reflect that Plaintiff "was in his usual state of health until

12/3/2009 when the gradual onset of symptoms began."  AR at 284.  She listed the

following symptoms: "Very stressed. Excessively sleeping. No concentration. Appetite is

fair. No suicidal thought," and the purported causes: "Wife was incarcerated. . . financial

aid was denied so he is behind in his bills."  AR at 284.  Her assessment of Plaintiff was

"Depression uncontrolled."  AR at 284.  Dr. Brown prescribed Celexa and generic

Wellbutrin, both antidepressants.  *Medicines for Treating Depression: A Review of the*

*Research for Adults*, U.S. Department of Health & Human Services,

http://www.effectivehealthcare.ahrq.gov/search-for-guides-reviews-and-

reports/?pageaction=displayproduct&productID=1142&ECem=120730 (last visited

September 8, 2014).

 At a follow up examination on March 26, 2010, Dr. Brown noted that Plaintiff

"feels depression improving. [F]ocus is better. Appetite is good. [S]leep is not good. No

side effects noted."  AR at 309.  Dr. Brown continued Plaintiff's prescriptions for Celexa

and generic Wellbutrin.  AR at 309.

 On April 14, 2010, Dr. Brown wrote Plaintiff a "Disability/Excuse Note" to provide

to his "supervisor, personnel department, school nurse, teacher, and or coach."  AR at
278.  The note does not specify to whom Plaintiff was to give the note or for how long
Plaintiff was being excused.  The note did, however, explain that Plaintiff was "[b]eing
treated for depression."  AR at 278.

Plaintiff next saw Dr. Brown on September 10, 2010.  AR at 281. Plaintiff had been
incarcerated in August 2010 for driving without a license and had been given only one of
his two prescribed antidepressants.  AR at 281.  By September 2010, he had run out of his
medications and was hoping to restart them.  AR at 281.  Dr. Brown restarted Plaintiff's
prescriptions for Celexa and generic Wellbutrin.  AR at 281.

The record reflects that Plaintiff did not visit Dr. Brown between September 2010
and August 2011.  *Accord doc. 27*, Ex. 1 at 7-9.

An undated and unsigned "Psychiatric Review Technique" form that appears to
have been completed on or around January 18, 2011,[1] concluded that Plaintiff's
depression was not severe.  AR at 287.  The form indicates that Plaintiff was not suffering
from a "[m]edically documented history of a chronic organic mental [], schizophrenic, etc.
[], or affective [] disorder of at least 2 years' duration that has caused more than a
minimal limitation of ability to do any basic work activity, with symptoms or signs
currently attenuated by medication or psychosocial support, and one of the following: 1.
Repeated episodes of decompensation, each of extended duration 2. A residual disease

---

[1] Plaintiff's November 2010 applications for benefits were denied on January 20, 2010, the Psychiatric
Review Technique form refers to the September 2010 visit to Dr. Brown as "recent," and other documents
refer to a PRTF (seemingly "Psychiatric Review Technique form") completed on or around January 18,
2010.  AR at 301, 303.

process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement."  AR at 298.  Under the heading "Consultant's Notes," the author concluded that "[Plaintiff's] depression is currently non-severe in the sense of functional limitations."  AR at 299.

On January 19, 2011, Eric Weiner, Ph.D., a state-agency psychologist, completed a Form SSA-416 in which he appears to have ratified the above Psychiatric Review Technique form.  AR at 301.

On March 17, 2011, upon reconsideration of Plaintiff's applications for benefits, Scott R. Walker, M.D., a state-agency psychiatrist, affirmed the assessments made in the "PRTF/416 for mental nonsevere [] completed and signed on 1/19/11 by Dr. Eric Wiener in Florida."  AR at 303.  Dr. Walker noted Plaintiff's "additional allegations of increased stress, increased depression and anger."  AR at 303.  He also noted that Plaintiff had "list[ed] no new medical sources and could not be reached by phone," and a medical source statement that appears to have been filled out by Plaintiff "indicated, 'no money, no doctor, no pills, more problems, need help.'"  AR at 303.  Dr. Walker concluded, "Prior assessment affirmed as there is no new medical evidence available."  AR at 303.

On July 23, 2011, Plaintiff went to the hospital where he was treated for gastroesophageal reflux, high blood sugar, hypertension, and strep throat.  AR at 390-91.

W. Chris Robinson, M.D., completed a "Discharge Summary Note" in which he listed Plaintiff's medications.  AR at 391.  This list included medications used to treat ulcers, stomach and esophagus problems, high blood pressure, and high blood sugar, but did not include medications used to treat depression. [2]

On August 12, 2011, Plaintiff met Dr. Brown for an ER follow up appointment.  AR at 305.  Dr. Brown's notes reflect that Plaintiff had been working 14 hour days at a new job.  AR at 305.  "In order to stay active he was drinking sodas and caffeinated beverages continually."  AR at 305.  Although Plaintiff returned to work after being released, "[h]e found himself unable to tolerate the 14 hour days, and unable to monitor his sugars adequately. He was therefore released from his job and continues unemployed at this time."  AR at 305.  Dr. Brown assessed "Diabetes Mellitus Type II controlled" and "Depression uncontrolled."  AR at 305-06.  Dr. Brown noted the medications prescribed to Plaintiff by the hospital physician, and she prescribed Celexa and generic Wellbutrin. AR at 305-06.

On October 31, 2011, Plaintiff returned to Dr. Brown for a follow-up appointment on his diabetes.  AR at 347.  Plaintiff stated that it "is the equivalent of a full time job to

---

[2] The list included: (1) Carafate, which is used to treat and prevent ulcers (Sucralfate, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681049.html  (last visited September 8, 2014));  (2) Omeprazole, which is used to treat gastroesophageal reflux disease (Omeprazole, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693050.html  (last visited September 8, 2014)); (3) Lisinopril, which is used to treat high blood pressure (Lisinopril, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a692051.html (last visited September 8, 2014));  (4) Metformin, which is used to treat type 2 diabetes (Metformin, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html#why (last visited September 8, 2014)); and (5) a sample of NovoLog, which is used to treat diabetes (Insulin Aspart (rDNA Origin) Injection, MedLineplus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a605013.html (last visited September 8, 2014)).

follow appropriate diet and monitor sugars."  AR at 347.  Plaintiff further stated that

"[h]e is not working at this time, due to no driver's license," and explained that "he is

unable to afford the $80 per month cost for a breathalyzer ignition lock."  AR at 347.  Dr.

Brown noted, "Psychiatric depression related to inability to drive.  Cannot afford a

breathalyzer depression."  AR at 347.  She assessed, among other things, "Depression"

and "Family Disruption."  AR at 347.

On January 23, 2012, at a follow up visit, Dr. Brown noted that Plaintiff had

eliminated sugar from his diet, that he was more physically active, that his "[p]sychiatric

depression [had] much improved," and that he was "[m]uch slower to anger."  AR at 346.

Under a section labeled "Habits" and subsection labeled "Exercise," Dr. Brown noted that

Plaintiff was "working at home."  AR at 346. Dr. Brown's assessment was that both

Plaintiff's diabetes and depression were improving.  AR at 346.  She again prescribed

antidepressant and diabetes medication.  AR at 346.

On May 9, 2012, Plaintiff met with Dr. Brown to follow up on his medications.  AR

at 440.  Dr. Brown noted that "[Plaintiff] is feeling good. He is doing yard work physical

labor [sic]. Feels like he is unlikely to need further insulin . . . Psychiatric depression

seems good." AR at 440.  She further reported that Plaintiff is "unemployed but doing

crafts and working on his house." AR at 440.  His mood was "animated" and "upbeat."

AR at 440.  She again found that Plaintiff's diabetes and depression were improving, and

prescribed antidepressant and diabetes medications.  AR at 440.

On September 13, 2012, Plaintiff saw Dr. Brown to follow up on his treatment for

diabetes and depression.  AR at 438.  Dr. Brown stated that Plaintiff had been "in his

usual state of health until this morning. He is somewhat angry at the long wait, has spent

a great deal of time listing the faults in the construction and cleanliness of the room."  AR

at 439.  According to Dr. Brown's notes, Plaintiff stated,

> [H]e has always been somewhat compulsive, and quick to criticize. He is no
> longer 'blowing up' at coworkers or employees. Does state that previously he
> worked in larger restaurants and managed employees there. This past summer
> he worked at a nearby café, but was fired when he got angry and exchanged
> words with co-workers and his employer. He plans to return to selling firewood
> this fall and continues to remodel and rent out apartments on his property. States
> he can pace himself and do odd maintenance jobs as tolerated. His disability
> application is being processed. He plans to complete the purchase of his house, if
> possible, by December when a balloon payment comes due or he is allowed to
> continue financing it (payments will increase to $900/month).

AR at 339.  Dr. Brown wrote that Plaintiff's mood was "agitated" and "angry," that his

"[t]hought content was mildly circuitous," and that he had been "[f]lashing and juggling

a pocket knife during [the] interview, although he quickly put it away during the

discussion."  AR at 438-39.  She assessed depression and diabetes.  AR at 439.

> 2.  _Dr. Brown's Medical Source Statement_

Two weeks later, on September 27, 2012, Dr. Brown completed a medical source

statement in which she diagnosed Plaintiff as being bipolar and as suffering from the

following symptoms: "easily angered, poor focus, [high] glucose, [high] BP [blood

pressure]."  AR at 483.  Under the section asking her to "[i]dentify the clinical findings

and objective signs," Dr. Brown wrote: "easily angered."  AR at 483.  Dr. Brown was then

asked to determine Plaintiff's "ability to do work-related activities on a day-to-day basis

in a regular work setting . . . based on your examination of how your patient's mental/emotional capabilities are affected by the impairment(s)."  AR at 483.  The form provided the following series of choices for Dr. Brown to choose from in assessing Plaintiff's mental ability: (1) unlimited or very good; (2) limited but satisfactory; (3) seriously limited, but not precluded; (4) unable to meet competitive standards; and (5) no useful ability to function.  AR at 484.  The form defined the three most limited assessments as follows:

- *Seriously limited, but not precluded* means ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances.
- *Unable to meet competitive standards* means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting.
- *No useful ability to function,* an extreme limitation, means your patient cannot perform this activity in a regular work setting.

AR at 484.  Of the sixteen listed "Mental Abilities and Aptitudes Needed to Do Unskilled Work," Dr. Brown concluded that Plaintiff was limited but satisfactory in six areas; seriously limited, but not precluded in nine areas; and unable to meet competitive standards in one area.  AR at 484.

The sole area in which Plaintiff was unable to meet competitive standards was in his ability to "[r]espond appropriately to changes in a routine work setting."  AR at 484.

Dr. Brown found Plaintiff to be seriously limited, but not precluded in the following areas:

1. Maintain regular attendance and be punctual within customary, usually strict tolerances
2. Sustain an ordinary routine without special supervision.

3.  Work in coordination with or proximity to others without being unduly distracted
4.  Complete a normal workday and workweek without interruptions from psychologically based symptoms
5.  Perform at a consistent pace without an unreasonable number and length of rest periods
6.  Accept instructions and respond appropriately to criticism from supervisors
7.  Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes
8.  Deal with normal work stress
9.  Be aware of normal hazards and take appropriate precautions

AR at 484.  Dr. Brown found Plaintiff limited but satisfactory in the following areas:

1.  Remember work-like procedures
2.  Maintain attention for two hour segment
3.  Carry out very short and simple instructions
4.  Make simple work-related decisions
5.  Sustain an ordinary routine without special supervision
6.  Ask simple questions or request assistance

AR at 484.

In the next section, Dr. Brown was asked to "[e]xplain limitations falling in the three most limited categories . . . and include the medical/clinical findings that support this assessment."  AR at 484.  She wrote, "Easily angered, likely to 'blow up' with coworkers."  AR at 484.

Dr. Brown did not fill out any sections of the form pertaining to physical impairments.  AR 485-87.

In the final section of the medical source statement form, Dr. Brown indicated that Plaintiff's impairments were "likely to produce 'good days' and 'bad days.'"  AR at 487.  She then estimated that Plaintiff would likely be absent from work "[a]bout three days a

month" due to his impairments or treatment.  AR at 487.

### B.  Procedural History

Plaintiff filed an application for disability and disability insurance benefits under Title II of the Social Security Act on November 3, 2010, and for supplemental security income under Title XVI on November 19, 2010.  AR at 15.  Both applications alleged an onset date of February 25, 2010.  *Id.*  Both claims were denied on January 20, 2011.  *Id.*  Both were denied again after reconsideration on March 23, 2011.  *Id.*  Upon Plaintiff's request, a video hearing was held on October 1, 2012 in front of Administrative Law Judge (ALJ) Barry O'Melinn.  *Id.*  A vocational expert, Mary Diane Weber, also attended the hearing, as well as Plaintiff's counsel, Jeffrey B. Diamond.  *Id.*

The ALJ subsequently issued an opinion finding that Plaintiff had not been disabled at any time between his alleged onset date of February 25, 2010, and the date of the ALJ's decision, November 28, 2012.  *Id.*  In determining whether Plaintiff was entitled to benefits, the ALJ applied the sequential five-step analysis as required by Social Security Administration (SSA) regulations.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final agency decision.  AR 5 – 7.  Plaintiff now requests that this Court reverse or remand this decision.  *Doc. 27.*

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may only review a final decision of the Commissioner to determine whether it (1) is supported by "substantial evidence," and (2)

comports with the proper legal standards. *Casias v. Sec'y of Health & Human Serv.*, 933

F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, 'we neither reweigh

the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511

F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias,*

933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the

evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*,

79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence

supporting his decision, the ALJ must also discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at

1010. "The possibility of drawing two inconsistent conclusions from the evidence does

not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*,

489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th

Cir. 2004)).

### III.   DISABILITY DETERMINATION PROCESS

For purposes of Social Security disability insurance benefits, an individual is

disabled when he is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a person satisfies these

criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.   If the

Commissioner is able to determine whether an individual is disabled at one step, he does

not go on to the next step.  20 C.F.R. § 404.1520(a)(4).  The steps are as follows:

> (1) Claimant must establish that he is not currently engaged in "substantial gainful activity."  If claimant is so engaged, he is not disabled.
> (2) Claimant must establish that he has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that have lasted for at least one year.  If claimant is not so impaired, he is not disabled.
> (3) Claimant must establish that his impairment(s) are equivalent to a listed impairment that has already been determined to be so severe as to preclude substantial gainful activity.  If listed, the impairment(s) are presumed disabling.
> (4) If the claimant's impairment(s) are not listed, claimant must establish that the impairment(s) prevent him from doing his "past relevant work."  If claimant is capable of returning to his past relevant work, he is not disabled.
> (5) If claimant establishes that the impairment(s) prevent him from doing his past relevant work, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work."  If the Commissioner is unable to make that showing, claimant is deemed disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity

(RFC) in light of "all of the relevant medical and other evidence." 20 C.F.R. §

404.1545(a)(3).  A claimant's RFC is "the most [he] can still do despite [his physical and

mental] limitations."  *Id*. § 404.1545(a)(1).  Second, the ALJ determines the physical and

mental demands of claimant's past work.  "To make the necessary findings, the ALJ must

obtain adequate 'factual information about those work demands which have a bearing on

the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting SSR 82-62, 1982

WL 31386 (1982)).  Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands.  *Id*. at 1023, 1025.

Here, at steps one, two, and three, respectively, the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date, that his physical and mental impairments were "severe," but that these impairments did not meet or equal the severity of a listed impairment.  AR at 17-18.  At the fourth step, the ALJ found that Plaintiff's RFC, with some additional limitations, made him capable of performing "sedentary work," 20 C.F.R. § 404.1567(a);  20 C.F.R. § 416.967(a), but incapable of performing "past relevant work," 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b).   AR at 19, 23.  At the fifth and final step, based on Plaintiff's RFC, age, education, and work experience, the ALJ concluded that Plaintiff was capable of performing jobs that were available in significant numbers in the national economy.  AR at 24.

## IV.   ANALYSIS

Plaintiff does not challenge the ALJ's determinations at steps one, two, or three of the sequential analysis.  Instead, Plaintiff argues that the ALJ erred at steps four and five by (1) failing to apply the first of two tests for weighing a treating physician's opinions under the treating physician rule and (2) "failing to provide any reasons for accepting some aspects of the treating physician's medical opinions but rejecting others."  *Doc. 27*, Ex.1 at 13, 19.  Having carefully reviewed the record and applicable law, I recommend that the Court find that the ALJ erred in applying the treating physician rule and grant Plaintiff's request for remand.

Plaintiff argues that "[t]he ALJ committed legal error by failing to apply the 'treating physician rule.'" *Doc. 27*, Ex. 1 at 17. Where, as here, an ALJ affords less than controlling weight to a treating source's opinions on "the nature and severity" of an impairment, two steps must be taken by the ALJ. 20 C.F.R. § 416.927; 20 C.F.R. § 404.1527; *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If an ALJ fails to take each step and sufficiently set forth reasoning to allow for meaningful judicial review, remand is required. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Because the ALJ's decision does not comport with the applicable legal standards for assigning weight to medical opinions, I recommend remanding the case to the ALJ.

### A.  <u>The Treating Physician Rule</u>

The Tenth Circuit has outlined a two-step analysis for determining the weight to be given a claimant's treating physician's opinions. At the first step, an ALJ must determine whether a treating source's opinion is entitled to controlling weight. To give anything less than controlling weight, the ALJ must demonstrate that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" on the record. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2). If in refusing to give controlling weight for either of the above two reasons, the ALJ's decision is not supported by substantial evidence, and remand is required.

Even if a treating source opinion is not entitled to controlling weight, it is still entitled to deference. *Titles II & XVI: Giving Controlling Weight to Treating Source Med.*

14

*Opinions*, SSR 96-2p, 1996 WL 374188 (July 2, 1996).  Thus, after refusing to afford

controlling weight, the ALJ must, at the second step, apply the six factors listed in SSA

regulations to determine the weight to give a non-controlling treating source opinion.  20

C.F.R. § 416.927(c)(2) ("When we do not give the treating source's opinion controlling

weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as

well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the

weight we give you treating source's opinion"); 20 C.F.R. § 404.1527(c)(2) (same). The six

factors to be considered in determining an opinion's weight are:

    a.  the length of the treatment relationship and the frequency of examination;
    b.  the nature and extent of the treatment relationship;
    c.  the degree to which a medical source provides supporting explanations for the opinion;
    d.  the degree to which the opinion is consistent with the record as a whole;
    e.  whether the medical source is a specialist in area related to the opinion; and
    f.  any other factors that tend to contradict or support an opinion

*See* 20 C.F.R. § 416.927(c)(2)-(6); 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ need not explicitly

consider and apply each and every factor to each opinion.  *Oldham*, 509 F.3d at 1258

("That the ALJ did not explicitly discuss all the [SSA] factors for each of the medical

opinions before him does not prevent this court from according his decision meaningful

review . . . The ALJ provided good reasons in his decision for the weight he gave to the

treating sources' opinions. Nothing more was required in this case.") (citations omitted).

The ALJ must, however, "make clear how much weight the opinion is being given

(including whether it is being rejected outright) and give good reasons, tied to the factors

specified in the cited regulations for this particular purpose, for the weight assigned."
*Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300-01).

    Regarding these two steps, the Tenth Circuit has repeatedly stated that they must
be taken sequentially such that the reasons for refusing to afford controlling weight and
the reasons for assigning a particular weight are clearly delineated. *Watkins v. Barnhart*,
350 F.3d 1297, 1300 (10th Cir. 2003);  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)
("Our case law, the applicable regulations, and the Commissioner's pertinent Social
Security Ruling (SSR) all make clear that in evaluating the medical opinions of a
claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each
step of which is analytically distinct.");  *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083
(10th Cir. 2004) (Finding error where "[a]lthough it [was] obvious from the ALJ's decision
that he did not give [the treating source's] opinion controlling weight, the ALJ never
expressly stated that he was not affording it controlling weight, nor did he articulate a
legitimate reason for not doing so.");  *Chrismon v. Colvin*, 531 F. App'x 893, 900-01 (10th
Cir. 2013) (unpublished) (stating that an ALJ's failure to follow the sequential, analytically
distinct two-step inquiry requires remand).   Admittedly, some overlap exists between the
two bases for denying controlling weight and the six factors to be considered in assigning
a less-than-controlling weight.[3]   The Tenth Circuit has nevertheless explained that

---

[3] *Compare* 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2) (an opinion that is not well-supported by "medically acceptable clinical and laboratory diagnostic techniques" or that is "inconsistent with other substantial evidence" in the record may be denied controlling weight) *with*  20 C.F.R. § 416.927(c)(3); 20 C.F.R. § 404.1527(c)(3) (the more an opinion is supported by relevant evidence, "particularly medical signs and laboratory findings," the more weight it is to be given) *and* 20 C.F.R. § 416.927(c)(4); 20 C.F.R. §

"[e]xplicit findings properly tied to each step of the prescribed analysis facilitate

meaningful judicial review," and are therefore required to avoid remand.  *Chrismon*, 531

F. App'x at 901 (unpublished); *see also Watkins*, 350 F.3d at 1300.

### B.  <u>The ALJ's Analysis does not abide by the Treating Physician Rule.</u>

Upon comparing the required legal analysis outlined above to the analysis in the

ALJ's opinion, the need for remand becomes apparent.  The ALJ determined Plaintiff

"ha[d] the RFC to perform sedentary work" with some additional mental limitations such

as "requir[ing] a low stress job with only occasional interaction with the public and

coworkers, such that teamwork is not required."  AR at 19.  In so doing, the ALJ

incorporated some of Dr. Brown's opinions but not others and outright rejected another

one.  The ALJ's explanation for this assessment of Dr. Brown's opinions is as follows:

> As for the opinion evidence, Dr. Brown's medical source statement is accorded
> significant weight. However, there is no credible basis to support her opinion
> that Mr. Trujillo would likely experience three or more absences per month due
> to his impairment. I note that Dr. Brown is not a psychiatrist, but is Mr.
> Trujillo's primary care physician. The fact that he is able to operate a business
> cutting and selling wood, in addition to doing odd jobs, maintaining his
> property, and functioning as a landlord are not supportive of Dr. Brown's
> opinion.  He completed aircraft maintenance school in November of 2009, but
> has been unable to find work in this field.   The combination of the work
> required and the level of responsibility attending these endeavors, when taken
> in combination, is inconsistent with a finding of disability.  I therefore give
> greater weight to claimant's demonstrated ability than to the doctor's opinion.

AR at 23 (emphasis added).  Later in the decision, the ALJ also stated, "I have also

considered the statements made by third parties on [Plaintiff's] behalf" that "also reflect a

---

404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will
give that opinion").

significant activity level," which "when taken with the record as a whole, [] support the findings I have made." AR at 23 (citing Exs. 6E, 18E, and 19E). The ALJ concluded, "In sum, the above residual functional capacity assessment is supported by [Plaintiff's] sustained activity. The fact that he is not working or earning more is attributable to his criminal history and lack of a driver's license rather than to disability." AR at 23.

1. <u>The ALJ's Denying Controlling Weight to Dr. Brown's Opinions is not supported by Substantial Evidence.</u>

Plaintiff contends that the ALJ "completely ignored" the first step by failing to "ma[ke any] findings whatsoever to determine if the opinions of physician Arlene Brown, M.D., were entitled to controlling weight." Doc. 27-1 at 18. The Commissioner responds that "the ALJ clearly stated that he accorded the opinion 'significant weight,' and provided reasons why he was not adopting the opinion in its entirety (*i.e.*, opinion not accorded controlling weight)." Doc. 28 at 7 (citations omitted). Plaintiff aptly replies, "The Commissioner misstates the 'treating physician rule' by equating the two, sequential tests that an ALJ must apply, even though the Tenth Circuit has repeatedly explained that an ALJ must consider both tests, separately and expressly." *Doc. 20* at 1; *see also supra* pp. 16-17.

Although the Commissioner is correct in asserting that a finding of significant weight is a finding that the opinion is not entitled to controlling weight, both the ALJ's opinion and the Commissioner's response brief proceed immediately from the decision to accord significant weight to an explanation for giving that weight. Step one, however,

requires a finding that the treating source's opinions are not entitled to controlling weight for one or both of the two bases for doing so. The question for the Court, therefore, is whether either of these two bases is present in the ALJ's decision.

As noted above, most of the ALJ's analysis appears to outline his reasoning for rejecting Dr. Brown's opinion about Plaintiff's ability to consistently attend work.   Later in the decision, however, the ALJ cited to third-party statements as supporting his findings about the opinions evidence.  Inconsistency with other substantial evidence on the record is a legitimate reason for making such a finding.  20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2).  The ALJ's decision not to afford Dr. Brown's opinion controlling weight, however, is not supported by substantial evidence.

A treating source's opinion is inconsistent with other substantial evidence in the record when there is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p, 1996 WL 374188 (July 2, 1996).

Here, the only portion of the ALJ's decision pertaining to Dr. Brown's opinions that were afforded significant–and not controlling–weight discusses several third-party statements.  *See* AR at 23.  Plaintiff's aunt, "noted her nephew's relatively unlimited activities, including playing sports when possible," but also "note[d] some problems getting along with others."  AR at 23 (citing Ex. 6E).  John Duncan, a Preaching Minister at Plaintiff's church, "noted he had seen significant growth [in Plaintiff], with greater

discipline and more self-control."  AR at 23 (citing Ex. 18E).  The ALJ also cited to statements made by Irma Losoya, who appears to be a renter on Plaintiff's property.  AR at 23.  Ms. Losoya remarked that "she see[s Plaintiff] as troubled, moody, depressed," (AR at 276); that "[s]ometimes he sleeps for 3 or 4 days, after which he gets hyper, sometimes not easy to get along with," (AR at 276); and that "[h]e works when he can for about 2 or 3 days almost nonstop, then he becomes discouraged because of no work or not able to maintain steady work because of his temper," (AR at 276).

The question before this Court is whether a reasonable mind could accept this evidence as contrary to Dr. Brown's opinions such that they would not be afforded controlling weight.  I recommend finding that a reasonable mind could not do so.  A reasonable mind could not, for example, accept the above evidence as controverting Dr. Brown's conclusion that Plaintiff is unable to meet competitive standards in his ability to "respond appropriately to changes in routine work setting."   Nothing in Plaintiff's aunt's statements that he watches TV every day and plays sports "when possible" suggests that Plaintiff would be able to respond to changes in routine work setting; nor do Mr. Duncan's statements that Plaintiff has grown and become more disciplined; nor do Ms. Losoya's statements about Plaintiff's sometimes unpleasant and difficult disposition.  Thus, the ALJ's refusal to give controlling weight to this opinion is not supported by

substantial evidence.[4]   Accordingly, I recommend that the Court grant Plaintiff's Motion to Reverse or Remand.

      2.  <u>The ALJ's Step-Two Analysis is Doubly Deficient.</u>

      Even assuming the ALJ's decision to deny controlling weight to Dr. Brown's opinions is supported by substantial evidence, the ALJ erred by failing to adequately explain his reasoning for affording significant weight at the second step. Additionally, the ALJ also failed to explain why the reasons for rejecting one opinion did not apply with equal force to the opinions he gave significant weight.  Each of these actions was error.

      *a.  The ALJ did not adequately explain his reasoning for assigning significant weight to Dr. Brown's opinions.*

      As noted above, when ALJs refuse to afford controlling weight to an opinion, they "must make clear how much weight the opinion is being given (including whether it is being rejected outright) *and* give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (emphasis added). Like the ALJ's in *Krauser*, the ALJ here failed to complete the required analysis. In *Krauser*, the ALJ completed step one of the analysis, but failed to complete step two.  In that case, the ALJ concluded that the treating source's opinion "cannot be given controlling weight and then *said no more about it*."  *Id.* at 1331 (quotations and citations omitted).

---

[4] The undersigned is not recommending a finding that, upon remand, the ALJ must give Dr. Brown's opinion controlling weight.  Indeed, further analysis from the ALJ on this point may lead again to a rejection of Dr. Brown's opinions.

Here, the majority of the ALJ's analysis of Dr. Brown's opinions explains his

reasons for rejecting one opinion. Nowhere does he give any reason why the other

opinions should be afforded significant weight.  The Commissioner's brief repackages

the ALJ's reasoning by tying it to the applicable six factors, (*doc 28* at 7-10), but each of

the factors cited to, as applied to this case, diminish, not enhance, the weight to be given

to those opinions. Although the ALJ actually assigned a specific weight, thereby making

it further through the two-step inquiry than the ALJ in *Krauser*, he still did not complete

the task: he simply stated that Dr. Brown's medical source statement was afforded

significant weight and "then *said no more about it*."  *Krauser*, 638 F.3d at 1331 (emphasis

in original) (quotations omitted).  *Krauser*, however, requires ALJs to assign a specific

weight *and* explain their reasoning.  Accordingly, I recommend finding that the ALJ

erred at step two by failing to explain his reasoning for affording significant weight to

Dr. Brown's opinions and granting Plaintiff's Motion to Reverse or Remand.

   *b.   The ALJ also failed to explain his conflicting treatment of Dr. Brown's opinions.*

   Even if the Court were to construe the ALJ's analysis as adequately outlining his

reasons for affording significant weight, the ALJ also erred by failing to explain why the

reasons that detract from one of Dr. Brown's opinions do not detract from all of the

other opinions. In *Haga v. Astrue*, the Tenth Circuit held that an ALJ's failure to explain

why he rejected some of a consulting mental health professional's opinions while

adopting others required remand.  482 F.3d 1205, 1208 (10th Cir. 2007).[5]  Additionally, in *Frantz v. Astrue*, the Tenth Circuit went even further by holding that an ALJ's RFC determination that "reflected restrictions consistent with some of the moderate limitations identified on the Mental RFC, but not with all of them," mandated reversal. 509 F.3d 1299 (10th Cir. 2007).  The Court in *Frantz* explained, "While we recognize that an ALJ does not have to discuss every piece of evidence, he or she is required to discuss the unconverted evidence not relied upon and significantly probative evidence that is rejected."  *Id.* (citing *Clifton v. Chater*, 79 F.3d 1009-10 (10th Cir. 1996)).

Here, although the ALJ explained his reasons for rejecting one opinion but not for adopting the others, the Court should nonetheless remand because, as in *Haga*, "it is simply unexplained why the ALJ adopted some of [the medical source's] restrictions but not others."  *Id.* at 1208.  Moreover, as in *Frantz*, the ALJ's RFC is inexplicably consistent with some of Dr. Brown's opinions but not others.  The ALJ incorporated Dr. Brown's opinions about Plaintiff's needing a low stress job and requiring less interaction with the public, but he does not appear to have incorporated Dr. Brown's most restrictive functional limitation that Plaintiff could not meet competitive standards in his ability to "[r]espond appropriately to changes in routine work setting."  AR at 484.  There are also limitations that were equivalent to Plaintiff's needing a low stress job that were not incorporated into the RFC and whose exclusion therefrom cannot be accounted for by the ALJ's reasons for rejecting one of Dr. Brown's opinions.  These

---

[5] The factors for assessing a consulting examiner's opinions are the same as those for assessing a non-controlling, treating source's opinions.  20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c)

limitations include, but are not limited to, Plaintiff's ability to (1) sustain an ordinary

routine without special supervision; (2) perform at a consistent pace without an

unreasonable number and length of rest periods; (3) accept instructions and respond

appropriately to criticism from supervisors.  The Tenth Circuit requires ALJs to explain

their reasoning when adopting certain portions of a medical opinion but not others

from the same source.  Because the ALJ here failed to do so, I recommend that the Court

grant Plaintiff's Motion to Reverse or Remand.

## V.   CONCLUSION

     Plaintiff has demonstrated that the ALJ erred in his analysis of Plaintiff's treating

physician's opinions.  Therefore, I recommend that the Court GRANT Plaintiff's Motion

to Reverse or Remand, and remand this case to the Commissioner for further proceedings

consistent with this opinion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE